NM

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**FILED**

MAR - 7 2019 NB

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

Richard Hernandez,

CASE No. 1:18-CV-06375

(Enter above the full name
of the plaintiff or plaintiffs in
this action)

Judge Gary Feinerman

vs.

Chicago Municipal,
Chicago Police Department (CPD),
Rahm Emanuel Mayor of Chicago,
Garry Francis McCarthy Superintendent of Chicago Police Dept. (CPD),
Supervisors of Chicago Police Dept. (CPD),
Police Officer Toczek of Chicago Police Dept. (CPD),
Cicero Municipal,
Cicero Police Department,
Jerry Chlada Jr. Superintendent of Cicero Police Dept.
Supervisors of Cicero Police Dept.,
Police Officer John Doe of Cicero Police Dept.
Police Officer Jane Doe of Cicero Police Dept.

~~Case No:~~ _____
(To be supplied by the Clerk of this Court)

(Enter above the full name of ALL
defendants in this action. Do not
use "et al.")

**CHECK ONE ONLY:**          **AMENDED COMPLAINT**

__X__     **COMPLAINT UNDER THE CIVIL RIGHTS ACT, TITLE 42 SECTION 1983**
          **U.S. Code** (state, county, or municipal defendants)

_____     **COMPLAINT UNDER THE CONSTITUTION ("BIVENS" ACTION), TITLE**
          **28 SECTION 1331 U.S. Code** (federal defendants)

__X__     **OTHER** (~~cite statute, if known~~) Universal Declaration of Human Rights Violations

BEFORE FILLING OUT THIS COMPLAINT, PLEASE REFER TO "INSTRUCTIONS FOR
FILING." FOLLOW THESE INSTRUCTIONS CAREFULLY.

(1)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

I. **Plaintiff(s):**

A. Name: Richard Hernandez

B. List all aliases: NA

C. Prisoner identification number: N-73620

D. Place of present confinement: Shawnee Correctional Center

E. Address: 6665 State Route 146 East, Vienna, IL. 62995

(If there is more than one plaintiff, then each plaintiff must list his or her name, aliases, I.D. number, place of confinement, and current address according to the above format on a separate sheet of paper.)

II. **Defendant(s):**
(In **A** below, place the full name of the first defendant in the first blank, his or her official position in the second blank, and his or her place of employment in the third blank. Space for two additional defendants is provided in **B** and **C**.)

A. Defendant: Chicago Municipal

Title: Local Goverment

Place of Employment: 207 State Capitol, Springfield, IL. 62706

B. Defendant: Chicago Police Department (CPD)

Title: City of Chicago Police Department (CPD),

Place of Employment: 3510 S. Michigan Ave., Chicago, IL. 60653

C. Defendant: Rahm Emanuel Mayor of Chicago

Title: Mayor of Chicago

Place of Employment: 121 N. LaSalle St., #507, Chicago, IL. 60602

(If you have more than three defendants, then all additional defendants must be listed according to the above format on a separate sheet of paper.)

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

3. DEFENDANTS:

A. DEFENDANT: CHICAGO POLICE DEPARTMENT (CPD)
   TITLE: City of Chicago Police Department (CPD)
   PLACE OF EMPLOYMENT: 3510 S. Michigan Ave., Chicago, IL. 60653

4. DEFENDANT: GARRY FRANCIS McCARTHY
   TITLE: Superintendent of Chicago Police Department (CPD)
   PLACE OF EMPLOYMENT: 3510 S. Michigan Ave., Chicago, IL. 60653

5. DEFENDANT: Supervisors of Chicago Police Department (CPD)
   TITLE: Supervisor of Chicago Police Department.
   PLACE OF EMPLOYMENT: 3510 S. Michigan Ave., Chicago, IL. 60653

6. DEFENDANT: Police Officer Toczek of Chicago (CPD)
   TITLE: Police Officer of Chicago (CPD) #11476
   PLACE OF EMPLOYMENT: 3510 S. Michigan Ave., Chicago, IL. 60653

7. DEFENDANT: Cicero Municipal
   TITLE: Local Government
   PLACE OF EMPLOYMENT: 207 State Capitol, Springfield, IL. 62706

8. DEFENDANT: Cicero Police Department
   TITLE: Cicero Police Department.
   PLACE OF EMPLOYMENT: 4901 W. Cermak Rd., Cicero, IL. 60804

9. DEFENDANT: Jerry Chlada Jr.
   TITLE: Superintendent of Cicero Police Department.

10. DEFENDANT: Supervisors of Cicero Police Department
    TITLE: Supervisors of Cicero Police Department.
    PLACE OF EMPLOYMENT: 4901 W. Cermak Rd., Cicero, IL. 60804

11. DEFENDANT: Police Office John Doe of Cicero Police Department.
    TITLE: Police Office of Cicero Police Department.
    PLACE OF EMPLOYMENT: 4901 W. Cermak Rd., Cicero, IL. 60804

12. DEFENDANT: Police Office Jane Doe of Cicero Police Department
    TITLE: Police Office of Cicero Police Department.
    PLACE OF EMPLOYMENT: 4901 W. Cermak Rd., Cicero, IL. 60804

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

III. **List ALL lawsuits you (and your co-plaintiffs, if any) have filed in any state or federal court in the United States:**

A. Name of case and docket number: Richard Hernández v. Field Service Office, et al., Case No. 1:18-cv-04278

B. Approximate date of filing lawsuit: June 19, 2018

C. List all plaintiffs (if you had co-plaintiffs), including any aliases: NA

D. List all defendants: Stateville Dept. of Corrections - NRC, Field Service Office Supervisors; Illinois Dept. of Corrections Prisoner Review Board Supervisor Bruce Falkner; Illinois Dept. of Corrections Director John Baldwin; Agent M. Harris (Cook County Jail Liaison Unit).

E. Court in which the lawsuit was filed (if federal court, name the district; if state court, name the county): United States District Court for the Northern District of Illinois.

F. Name of judge to whom case was assigned: Andrea R. Wood, Magistrate Judge Daniel G. Martin

G. Basic claim made: That I was improperly given Mandatory Supervised Release for a sentence that has expired by law.

H. Disposition of this case (for example: Was the case dismissed? Was it appealed? Is it still pending?): Dismissed

I. Approximate date of disposition: July 2, 2018

**IF YOU HAVE FILED MORE THAN ONE LAWSUIT, THEN YOU MUST DESCRIBE THE ADDITIONAL LAWSUITS ON ANOTHER PIECE OF PAPER, USING THIS SAME FORMAT. REGARDLESS OF HOW MANY CASES YOU HAVE PREVIOUSLY FILED, YOU WILL NOT BE EXCUSED FROM FILLING OUT THIS SECTION COMPLETELY, AND FAILURE TO DO SO MAY RESULT IN DISMISSAL OF YOUR CASE. CO-PLAINTIFFS MUST ALSO LIST ALL CASES THEY HAVE FILED.**

(4)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

IV.     **Statement of Claim:**

State here as briefly as possible the facts of your case. Describe how each defendant is involved, including names, dates, and places. **Do not give any legal arguments or cite any cases or statutes.** If you intend to allege a number of related claims, number and set forth each claim in a separate paragraph. (Use as much space as you need. Attach extra sheets if necessary.)

Plaintiff is entitled to relief for the malicious prosecution with malice and false imprisonment. Also slander of my name/reputation.

The Respondents, acting under color of state law, had engaged in an "unlawful, unreasonable, and arbitrary investigation" leading to plaintiff arrest.

In addition, violations of Human Rights Article #9 - that no one shall be subject to arbitrary arrest, detention or exile.

Moreover, Plaintiff's claim is "NOT UNTIMELY". There is a special, and quite complicated accrual rule, set out in Heck vs. Humphrey, 512 U.S. 477 (1994) that applies where the plaintiff has a prior conviction whose validity might be implicated by a successful Section 1983 damages action. In such cases, the Section 1983 claim does not accrue until the underlying conviction is overturned or vacated. See also the important 2007 decision in Wallace vs. Kato, 549 U.S. 384 (2007) dealing with Heck, accrual and Section 1983 false arrest/imprisonment claims.

(5)

Revised 9/2007

[If you need additional space for ANY section, please attach an additional sheet and reference that section.]

Here the case number 14-CR-0508101 that stared in 2014. However, Plaintiff went to trial November 2016 and the criminal proceedings terminated in the Plintiffs' favor. See also, 1 C. Corman, Limitation of Actions section 7.4.1, p. 532 (1991) Carnes vs. Atkins Bros Co., 123 La. 26, 31, 48 So. 572, 574 (1909). Also section 1983 cause of action for damages attributable to an unconstitutional conviction or sentence does not accrue until the conviction or sentence has been invalidated.

Since all the defendants/official violated "clearly established statutory and constitutional Rights of which a reasonable person would have known," a qualified-immunity defense can not be granted.

All of the defendants routinely looked away and fail to act when all the above deprive Plaintiff of Constitution and Human Rights with Malice. Also intentionally infliction of emotional distress, with this FALSE arrest and malicious prosecution for case number 14-CR-0508101. There is also slander of Plaintiff name. See exhibit #1. Attached.

## Relief

Wherefore, Plaintiff respectfully pray that this court enter Judgment: Granting Plaintiff a declaration that the acts and omissions described herein violated his rights under the Constitution and law of the United States, and Human Rights. Grant Plaintiff wishes to sue each defendant in their personal capacities and official capacities for damages, issue a injunction ordering defendants

(6)

TO PUBLICLY APOLOGY FOR THE SLANDER OF PLAINTIFF NAME AND CARICTURE. ISSUE A INJUNCTION TO REMOVE ANY AND ALL PARTS OF THAT PROSECUTION FROM PLAINTIFF CRIMINAL RECORD, EXPUNGMENT OF RECORD. PLAINTIFF ASKS THE COURT THAT "PERSONAL IMMUNITY DEFENSES CANNOT BE INVOKED BY OFFICIALS SUE IN THEIR OFFICIAL CAPACITIES. GRANT PLAINTIFF COMPESATORY DAMAGES IN THE AMOUNT OF $10,000,000.00 AGAINST EACH DEFENDANT JOINLY AND SEVERALLY. GRANT PLAINTIFF THE WAGES THAT HE HAVE LOST DUE TO THIS MALICIOUS PROSECUTION. GRANT PLAINTIFF THE LOST OF HIS "TIME SHARE" THAT HE WAS PAYING OFF WHEN THIS MALICIOUS PROSECUTION. GRANT PLAINTIFF THE LOST OF MONEY THAT WAS SPENT ON COMMISSARY GOODS WHILE HE WAS FALSELY ARRESTED. GRANT PLAINTIFF THE COST IT TOOK TO PAY FOR ATTORNEYS FOR THIS MALICIOUS PROSECUTION. ALSO SEEK RECOVERY OF COST IN THIS SUIT. PUNITIVE DAMAGES AND ANY ADDITIONAL RELIEF THIS COURT DEEMS JUST, PROPER AND EQUITABLE.

CERTIFICATION

By SIGNING THIS COMPLAINT, I CERTIFY THAT THE FACTS STATED IN THIS COMPLAINT ARE TRUE TO THE BEST OF MY KNOWLEDGE, INFORMATION AND BELIEF. I UNDERSTAND THAT IF THIS CERTIFICATION IS NOT CORRECT, I MAY BE SUBJECT TO SANCTION BY THE COURT.

SIGNED THIS 1ST day of MARCH 2019.

*Richard Hernandez*
1942 N. KILDARE
CHICAGO, IL. 60639

(7)

# CRIME FIGHTER OR CRIMINAL?

**Richard Hernandez worked as an 'interrupter' with CeaseFire to stop street violence before it happened, but now he faces 36 counts for allegedly sexually assaulting a girl**

**BY FRANK MAIN**
Staff Reporter

On the streets, Richard Hernandez was supposed to stop violence as an "interrupter" in the celebrated CeaseFire program.

But Chicago cops have another name for him: rapist.

Hernandez faces 36 counts charging him with sexually assaulting and kidnapping a teenage girl while he worked for the program, the Chicago Sun-Times has learned. He's among at least nine employees of the anti-violence program to face serious criminal charges in recent years.

Hernandez, 46, started as a temporary worker in December 2010 before becoming a $16-an-hour "violence interrupter" in May 2013, records show. The program is affiliated with the University of Illinois at Chicago.

On April 16, 2012, he allegedly took a 17-year-old girl to a White Sox game and plied her with alcohol. Afterward, he allegedly sexually assaulted her in a junkyard. The assaults continued through August 2013, prosecutors said.

The teen contacted police on Feb. 15, and Hernandez was arrested four days later. He's being held in jail without bond. He has pleaded not guilty to the charges against him. His attorney declined to comment.

Hernandez's employment with CeaseFire ended in April, a University of Illinois at Chicago spokesman said. CeaseFire's interim program director referred questions to the UIC spokesman, who would not comment on Hernandez's arrest.

Hernandez is a ranking member of the Maniac Latin Disciples gang, prosecutors said. He was sentenced to prison for a 2006 gun conviction and a 2005 drug conviction, court records show.

Tio Hardiman, a former director of CeaseFire Illinois, said he was unaware of Hernandez's continued involvement in a gang. But he said Hernandez was effective in cooling off conflicts in Humboldt Park and Hermosa.

"You take a chance on these guys, but some of them drop out," Hardiman said. "If [Hernandez] is found guilty, he should be sentenced to the fullest extent of the law. The focus should be on the healing process for this young lady."

Hardiman had his own run-in with the law before he left CeaseFire last year. He was charged with domestic violence after his wife filed a complaint, but the case was dropped. CeaseFire didn't renew Hardiman's contract, and he started his own group, Violence Interrupters Inc. He also ran unsuccessfully against Gov. Pat Quinn in the March Democratic primary, garnering about 28 percent of the vote.

CeaseFire, a branch of Cure Violence, was founded in 2000 as a public-health approach to combating street violence. Violence interrupters like Hernandez are supposed to defuse conflicts before they escalate into shootings — like a doctor would treat a virus before it becomes a full-blown disease. Interrupters often are convicted offenders or former gang members.

CeaseFire, whose work was highlighted in the acclaimed documentary "The Interrupters," says murders and shootings have fallen at a greater rate in the areas where interrupters operate than they have decreased citywide.

But police anti-violence strategies have focused on those same areas, so it's difficult to quantify what impact CeaseFire is having. A study by the University of Chicago and UIC is seeking to answer that question, authorities say.

Police have long been suspicious about whether CeaseFire provides a cover for employees to commit crimes. They point to CeaseFire worker Sylvester Hudson, who was charged last year with selling heroin to a federal informant outside CeaseFire's headquarters at UIC.

Another CeaseFire employee was sentenced to Cook County boot camp in 2011 for possession of a machine gun/automatic weapon, records show. Since 2010, five other CeaseFire employees have been sentenced to federal prison — and a sixth was sentenced to probation — in drug cases.

In the past, CeaseFire officials have said employees charged with crime represent a small fraction of the hundreds of ex-offenders hired by the group in Chicago since 2000.

Email: fmain@suntimes.com



**Richard Hernandez was effective in cooling conflicts in Humboldt Park and Hermosa, says a former CeaseFire director.**

## THE MINIMUM-WAGE DEBATE

# MAXIMUM CONCERNS

**Task force hears from working poor who say they need more and employers worried pay increase will cause cutbacks. Now it's recommendation time.**

**BY MAUDLYNE IHEJIRIKA**
Staff Reporter

A citywide conversation regarding raising the minimum wage has sparked much passion, pleading and pushback.

Five public meetings held by the city of Chicago's Minimum Wage Working Group contained all these elements, and now the 17-member panel appointed by Mayor Rahm Emanuel is digesting testimony from hundreds of stakeholders who turned out to share their stories and weigh in on a debate taking place locally and nationally.

"It's a complex issue. I think people have been hurting," Ald. Will Burns (4th), the panel's co-chairman, said. "The Great Recession effectively wiped out a decade of income and wealth for most Americans, and if you look at workers with only a high school degree, their wages when indexed for inflation have not changed since the early 1970s."

The panel, representing business, labor, civic and political arenas, is expected to make its report to Emanuel by July 5 on how high to raise wages to lift the working poor — against the specter of potential harm to small businesses or running larger corporations away from the city. The City Council could vote on a wage measure July 30, its next meeting.

Raging nationally — minimum wage increases have been considered in 38 states this year — the debate has sparked passion as the nation's third-largest city considers an increase beyond Illinois' current $8.25 an hour.

"At $8.25 an hour, what kind of deals are we making with these corporations, where they come into our neighborhoods, pay you minimum wage and ask you to stand in a Public Aid line to subsidize your paychecks?" worker Anthony Edward demanded at the Working Group's first meeting, held June 9 at Kennedy-King College.

The minimum wage issue is part of a national push by Democrats, led by President Barack Obama, whose efforts to have the federal minimum wage raised to $10.10 an hour from the current $7.25 failed in Congress in April.

The issue will go before Illinois voters in the fall, after Gov. Pat Quinn signed a bill last week placing a nonbinding referendum on the Nov. 4 ballot asking voters whether minimum wage for those over age 18 should be raised to $10 an hour by Jan. 1, 2015.

In Chicago, the Working Group heard pleas from low-wage workers complaining that Illinois' current $8.25 an hour minimum wage isn't a "livable" wage able to sustain housing, transportation and other costs of living in Chicago.

"I am tired of waiting to get my bills shut off because I can't pay it. I'm tired of not being able to afford what my son wants. . . . I am just tired," worker Nancy Salgado said through tears at the group's June 12 meeting held at Malcolm X College.

Appointed by the mayor on May 19, the Working Group was given 45 days to come up with a recommendation. Emanuel has told the group he supports a raise, its members said, but hasn't indicated an amount he thinks can be stomached.

"This is an emotional issue," said panel member Tanya Triche, vice president and general counsel at the Illinois Retail Merchants Association. "It's not about whether businesses value their workers. This is about what the market will bear for certain levels of skills in the work force."

Retailers oppose enacting a minimum wage for Chicago that will be different from the Illinois rate.

Members of the Working Group, which include the Illinois Restaurant Association, Chicagoland Chamber of Commerce, Chicago Federation of Labor and the Service Employees International Union, hold wildly divergent views.



Members of Chicago's Minimum Wage Working Group listen to a speaker at the last of five community hearings on the issue at Roberto Clemente Community Academy on Thursday. | PETER HOLDERNESS/SUN-TIMES



**MINIMUM WAGE**
Hourly rate since 1980
— Illinois  — Federal
2014: $8.25
$7.25
SOURCE: U.S. Department of Labor   Sun-Times

The group has toiled in the shadow of a City Council ordinance proposed by some 15 aldermen on May 28, seeking to raise the minimum wage in Chicago to $15 an hour — the same as in Seattle. Immediately

**VIDEO ONLINE**
Watch the start of the final community meeting of the Minimum Wage Working Group, at **suntimes.com**.

challenged in a federal lawsuit, Seattle's minimum wage would be the highest base pay in any major U.S. city.

Chicago's Working Group has gotten pushback from businesses arguing that the proposed ordinance would kill jobs.

"If I have to pay $15 an hour, I'm slashing my staff in half, and at the same time raising my prices so that I can afford to pay the staff that I have," small-business owner Stephanie King-Myers said at the June 19 meeting, held at Truman College.

Under the proposed city ordinance, firms with more than $50 million in annual revenue would pay $12.50 an hour within 90 days of passage, $15 within a year. Phase-in for small- and medium-size firms would be $12 an hour within 15 months; $13 in two years; $14 in three years; and $15 in four years. For employees who rely on tips, the current $4.95 an hour minimum wage would increase to 70 percent of the new minimum wage.

"In the restaurant business, we don't pay everybody the same. My grill man is paid $15 an hour, my dishwasher $8 an hour," restaurant owner Josh Rutherford testified at Truman College. "Of every dollar, 30 percent is your food. Your payroll, operating expenses, rent and payback of your loan each are 10 percent. Only 5 percent is profit."

The public meetings often were raucous, with the panel struggling to maintain order.

Mostly, they brought out the city's low-wage workers and members of community and labor groups that form the Raise Chicago coalition — the group responsible for getting a nonbinding referendum on the March election ballot in 5 percent of city precincts.

The Working Group also has been reviewing data and other cities' policies. It hopes to come to a conclusion in discussion among members this week.

"The overriding theme we heard was the unaffordability of everyday life for hard-working people under the current minimum wage," said panel co-chairman John Bouman, president of Chicago-based Sargent Shriver National Center on Poverty Law.

"There's definitely disagreements on the panel and very strongly held points of view. But people do trust each other, and hopefully, we can preserve an atmosphere of free conversation and come to some sort of consensus."

**Email:** mihejirika@suntimes.com
**Twitter:** @Maudlynei

OFFICE OF
CLERK OF THE U.S. DISTRICT COURT
UNITED STATES COURTHOUSE
CHICAGO, IL 60604

OFFICIAL BUSINESS

1:18-cv-06375
Judge Gary Feinerman
Magistrate Judge Maria Valdez
PC9

neopost
01/23/2019
US POSTAGE $001.42⁰

ZIP 60604

03/07/2019-31